IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | | |
|---|---|---|
| UNDERWRITERS AT LLOYD'S OF LONDON, SYNDICATE 4242, GREG BUTLER, ACTIVE UNDERWRITER, | ) ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Cause No.: _____ |
| TARANTINO PROPERTIES, INC., | ) ) ) | **JURY TRIAL DEMANDED** |
| Serve Registered Agent: | ) ) | |
| Spenserv, Inc.<br>1000 Walnut Street<br>Suite 1400<br>Kansas City, Missouri 64106 | ) ) ) ) ) | |
| Defendant. | ) | |

## COMPLAINT FOR DECLARATORY JUDGMENT

COMES NOW Plaintiff Underwriters at Lloyd's of London, Syndicate 4242, Greg Butler, Active Underwriter, by and through the undersigned counsel, pursuant to 28 U.S.C. § 2201 and Rule 57 of the Federal Rules of Civil Procedure, and for its Complaint for Declaratory Judgment, hereby states as follows:

## PARTIES

1. Plaintiff Underwriters at Lloyd's of London, Syndicate 4242, Greg Butler, Active Underwriter ("Plaintiff"), is a foreign insurance carrier with its principal place of business in London, England.

2. Defendant Tarantino Properties, Inc. ("Defendant"), is a corporation organized and existing under the laws of the State of Texas with its principal place of business in Houston, Texas, and authorized to do business in the State of Missouri, and at all times relevant herein was

the owner of rental properties at 4610 South Brentwood Avenue, Independence, Missouri, 64055.

## JURISDICTION AND VENUE

3. Jurisdiction is proper with this Court pursuant to 28 U.S.C. § 2201 as Plaintiff is seeking a determination of its rights and obligations under a policy of insurance issued to Defendant. Jurisdiction is proper with this Court pursuant to 28 U.S.C. § 1332(a) because the parties are of diverse citizenship and the amount in controversy exceeds Seventy-Five Thousand Dollars ($75,000.00), exclusive of interest and costs.

4. Venue is proper with this Court pursuant to 28 USC § 1391(a) and Local Rule 3.1 because a substantial part of the events or omissions giving rise to this action occurred in Independence, Missouri, and the insured property that is the subject of the action is situated in Independence, Missouri.

## GENERAL ALLEGATIONS

5. Plaintiff brings this action seeking interpretation of an insurance policy issued to Defendant and a declaration of its rights and obligations thereunder.

6. Plaintiff issued to Defendant an insurance policy with effective dates of April 1, 2010, to April 1, 2011, Policy No. 42-8590161601-L-00 (the "Policy"). A copy of the Policy is attached hereto as Exhibit A and incorporated by reference as if fully set forth herein.

7. Subject to certain provisions, conditions, and exclusions, the Policy provides coverage to Defendant as the named insured for covered losses to its rental properties in the States of Louisiana, Missouri, and Texas, including the Independence, Missouri, properties to which Defendant claimed damage. Exhibit A.

8. The Policy's limit of liability for any one occurrence is $5,000,000.00 (Five Million Dollars), with a deductible of $25,000.00 (Twenty-Five Thousand Dollars). Exhibit A.

9. The Policy contains the following relevant exclusions, which preclude coverage for some or all of Defendant's claim as discussed below:

**B. Exclusions**

    **2.** We will not pay for loss or damage caused by or resulting from any of the following:

        **d.** **(1)** Wear and tear;
            **(2)** Rust or other corrosion, decay, deterioration, hidden or latent defects or any quality in property that causes it to damage or destroy itself;

            * * *
            **(6)** Mechanical breakdown…

            * * *
        **f.** Continuous or repeated seepage or leakage of water, or the presence or condensation of humidity, moisture or vapor…

    **3.** We will not pay for loss or damage caused by or resulting from any of the following…

        **c.** Faulty, inadequate or defective:

            * * *
            **(2)** Design, specifications, workmanship, repair, construction, renovation, remodeling, grading, compaction;
            **(3)** Materials used in repair, construction, renovation or remodeling; or
            **(4)** Maintenance…

Exhibit A.

10. The Policy contains the following relevant limitations:

**C. Limitations**

    The following limitations apply to all policy forms and endorsements, unless otherwise stated.

1. We will not pay for loss of or damage to property, as described and limited in this section. In addition, we will not pay for any loss that is a consequence of loss or damage as described and limited in this section.

* * *

c. The interior of any building or structure…caused by or resulting from rain, snow, sleet, ice…whether driven by wind or not, unless:

(1) The building or structure first sustains damage by a Covered Cause of Loss to its roof or walls through which the rain, snow, sleet, ice…enters…

Exhibit A.

11. The Policy contains the following relevant endorsements applicable to this claim:

**ASBESTOS AND SICK BUILDING EXCLUSION ENDORSEMENT**

**THIS ENDORSEMENT CHANGES YOUR POLICY. PLEASE READ THIS ENDORSEMENT CAREFULLY.**

**Asbestos and Sick Building Exclusion**

We will not pay for loss or damage caused by or resulting directly or indirectly from any of the following:

**A.** Any loss, damage or expense, or increase in loss, damage or expense caused by or resulting from:

**(1)** The removal, encapsulation, covering or any manner of control or abatement from any goods, products, or structure of asbestos…

* * *

**(4)** The presence of asbestos in any building or structure whether covered or not covered by this Policy.

* * *

**PRIOR LOSS EXCLUSION ENDORSEMENT**

**THIS ENDORSEMENT CHANGES YOUR POLICY. PLEASE READ THIS ENDORSEMENT CAREFULLY.**

The following **Prior Loss Exclusion** is added to this policy:

**Prior Loss Exclusion**

4

> We will not pay for any loss or damage that occurred prior to the effective date of this policy, including any continuation, change or resumption of such loss or damage during the Policy Period…

Exhibit A.

12. On or about September 18, 2010, Defendant claims that several buildings on its properties at 4610 South Brentwood Avenue in Independence, Missouri, commonly known as Quail Creek Apartments and Roundtree Apartments, and comprehending 65 buildings and three trash dumpster shelters (the "Insured Property"), were damaged by wind and/or hail.

13. On or about September 28 and 29, 2010, Plaintiff, through Boulder Claims, sent a roofing consultant, Grayco Roofing Consultants ("Grayco"), to the Insured Property to assess Defendant's claim.

14. In its Report dated November 9, 2010, Grayco noted, "There was no evidence to any exterior surfaces that this property has been exposed to or damaged by a catastrophic hail fall event."

15. Furthermore, Grayco's Report concluded complete replacement of the roofs and siding at the Insured Property was not warranted due to wind and/or hail damage.

16. Thereafter, Defendant claimed wind and/or hail damage from a second storm which occurred on or about December 11, 2010.

17. On or about January 3, 4, and 5, 2011, GAB Robins re-inspected the Insured Property following Defendant's report of the second storm and again found the damage from wind and/or hail to be less than Defendant's deductible under the Policy.

18. On or about December 2, 2011, Defendant submitted a sworn Statement in Proof of Loss to Plaintiff, through Boulder Claims, asserting $2,967,548.42 in wind and/or hail damage to the Insured Property from both storms (the "Proof of Loss").

19. Plaintiff retained a professional engineer, Brian Wehmeier of SEA, Ltd. ("SEA"), to inspect the Insured Property.

20. For a ten-day period from on or about September 12, 2011, to October 2, 2011, SEA inspected the Insured Property.

21. In its Report, SEA noted "a few isolated instances" of hail damage to shingles at the Insured Property. However, SEA noted, "These isolated indentations and fractures occurred on less than a half a dozen shingles on the [Insured Property]. The isolated presence of a few shingle indentations/fractures is not consistent with the distribution of damage due to a hailstorm."

22. SEA concluded that most of the damage observed was related to normal wear and tear, weathering, and deterioration, not wind and/or hail.

23. Plaintiff hired HAAG Construction Consulting, LLC ("HAAG"), to render an estimate as to the cost to repair the damage to the Insured Property from wind and/or hail from both storms.

24. HAAG estimated the cost to repair the wind and/or hail damage from both storms to be $277,854.98, which amount has been paid to Defendant by Plaintiff subject to the applicable deductible.

## DECLARATORY JUDGMENT

25. An actual case or controversy of a justifiable nature exists between Plaintiff and Defendant concerning the rights and obligations of each party under the Policy, and litigation as to this controversy is inevitable and imminent.

26. The resolution of the matters raised in this Complaint for Declaratory Judgment will dispose of all issues and disputes between the parties.

27. All necessary and proper parties are before the Court with respect to the matters in controversy.

28. Plaintiff has no adequate remedy at law.

### Damages Not Covered Pursuant to Policy Exclusions

29. Defendant's Proof of Loss includes the cost of asbestos testing and removal.

30. Any loss, damage, or expense resulting from asbestos is specifically excluded from coverage by the endorsements to the Policy. Exhibit A.

31. Asbestos testing and removal accounts for $72,867.20 of the Proof of Loss.

32. Pursuant to the exclusions in the Policy, there is no coverage for this asbestos-related damage.

33. The Proof of Loss also includes the cost to replace several skylights ostensibly damaged by wind and/or hail in the storms.

34. However, Plaintiff's investigation has led to the reasonable belief and conclusion that these problems are the result of faulty or defective maintenance, not damage from wind and/or hail.

35. Faulty and defective maintenance is specifically excluded from coverage by the Policy. Exhibit A.

36. Replacement of skylights accounts for $74,053.40 of the Proof of Loss.

37. Pursuant to the exclusions in the Policy, there is no coverage for this damage.

38. The Proof of Loss includes the cost to repair damage to several interiors of buildings at the Insured Property ostensibly caused by water intrusion at points of wind and/or hail damage to the roofs resulting from the storms.

39. The Policy limits coverage such that loss or damage to the interiors of the buildings at the Insured Property by rain or ice is excluded unless the rain or ice enters as a result of a covered cause of loss. Exhibit A.

40. Plaintiff's investigation has revealed that leak sources into the buildings at the Insured Property were due to long-term deterioration and inadequate maintenance of the roofs and "were NOT weather related."

41. Interior repairs account for $82,813.64 of the Proof of Loss.

42. Pursuant to the limitations in the Policy, there is no coverage for this damage.

43. The Policy also specifically excludes from coverage damage from normal wear and tear and deterioration and does not provide coverage for faulty, inadequate, or defective repairs or maintenance. Exhibit A.

44. Plaintiff's investigation revealed that the buildings at the Insured Property have "antiquated" siding.

45. Additionally, Plaintiff's investigation revealed damage from foot traffic on the roofs of the buildings at the Insured Property.

46. Plaintiff's investigation also revealed improper or faulty application of the shingles, resulting in "nail pops," improper maintenance, and other issues not associated with wind and/or hail.

47. Plaintiff's investigation concluded that the condition of the roofs on the buildings at the Insured Property is attributable to "long-term attrition and deterioration of aging heat stressed shingles."

48. This damage is not related to wind and/or hail, but to causes of loss specifically excluded from coverage by the Policy, namely wear and tear and deterioration.

49. Pursuant to the exclusions in the Policy, there is no coverage for this damage.

50. With respect to the siding on the buildings at the Insured Property, Plaintiff's investigation concluded that "[t]he same long-term wearing/weathering depletion is occurring to the antiquated and failing siding materials."

51. Plaintiff's investigation further revealed that there had been "repeated[] attempt[s]" to make repairs, and the repairs undertaken were "not a proper method of repair."

52. These damages are not related to wind and/or hail, but to causes of loss specifically excluded from coverage by the Policy, namely faulty, inadequate, or defective repair or maintenance.

53. Pursuant to the exclusions in the Policy, there is no coverage for this damage.

54. Additionally, Plaintiff's investigation has revealed that the majority of the observed hail damage to the soft metal on the appurtenances on the roofs of the buildings at the Insured Property was "noticeably older," with sediment and oxidization within the depressions on the metal.

55. This damage therefore falls under the Prior Loss Exclusion endorsement to the Policy even if it was caused by wind and/or hail and is not covered by the Policy.

56. Taken together, there are numerous items of alleged damage that are not covered by the Policy.

57. Plaintiff seeks a declaration that there is no coverage under the Policy for these certain items of damage claimed in the Proof of Loss.

### Items to which there has been no Physical Damage

58. Defendant's Proof of Loss includes the cost to remove storm windows on the buildings at the Insured Property in order to paint new siding.

59. However, Plaintiff's investigation has revealed that storm windows on the buildings at the Insured Property will not need to be removed in order to paint new siding.

60. The Proof of Loss also includes the cost to fully replace the gutters on the damaged buildings at the Insured Property.

61. Based on Plaintiff's investigation, total replacement of the gutters on the damaged buildings at the Insured Property is not necessary.

62. The Proof of Loss includes the cost to replace siding on the damaged buildings at the Insured Property.

63. However, Plaintiff's investigation has revealed that the amount of siding requiring replacement is significantly less than that included in Defendant's Proof of Loss.

64. The Policy requires physical damage to the Insured Property in order to trigger coverage. Exhibit A.

65. With respect to the above-listed items, there has been no physical damage so as to trigger coverage under the Policy in the amount claimed in the Proof of Loss.

66. Therefore, there is no coverage for these items under the Policy.

67. Furthermore, the Proof of Loss includes the cost to replace metal roof vents, pipe jacks, chimney flashing, and furnace vents on the damaged buildings at the Insured Property.

68. However, Plaintiff's investigation has revealed that these items are "generally manufactured with a soft metal that will be dented by hail too small to damage asphalt shingles." Furthermore, "the dents are *cosmetic only and will not affect the performance of the roof vents.*"

69. Because these dents are cosmetic only, there is no damage to these items, and there is no coverage under the Policy.

10
Case 4:12-cv-00167-DGK   Document 1   Filed 02/03/12   Page 10 of 12

70. Plaintiff denies coverage and liability to Defendant under the Policy in the amount of Defendant's Proof of Loss for the reasons set forth above, and for others, and has and continues to reserve all rights it has under the Policy and the laws of the State of Missouri.

71. Plaintiff has complied with all conditions precedent under the Policy.

72. By reason of the foregoing, a declaratory judgment is both necessary and proper in order to set forth and determine the rights, obligations, and liabilities that exist between Plaintiff and Defendant under the Policy.

WHEREFORE, Plaintiff Underwriters at Lloyd's of London, Syndicate 4242, Greg Butler, Active Underwriter, respectfully requests this Court to declare the rights and obligations of the parties under the Policy issued to Defendant Tarantino Properties, Inc., and to enter judgment in favor of Plaintiff, adjudging and declaring:

A. That coverage is excluded for at least a portion of Defendant's claimed loss under the above-referenced provisions of the Policy;

B. That the actual amount of Defendant's covered loss is as set forth in the HAAG Estimate totaling $277,854.98;

C. That this amount represents the full amount of coverage to which Defendant is entitled under the Policy; and

D. That Plaintiff is entitled to such further relief as the Court deems just and proper under the circumstances.

## DEMAND FOR JURY TRIAL

Plaintiff demands a trial by jury on all issues in this matter.

                        Respectfully submitted,

                        /s/Timothy J. Wolf
                        Russell F. Watters, #4653
                        Timothy J. Wolf, # 111072
                        BROWN & JAMES, P.C.
                        Attorneys for Plaintiff
                        1010 Market Street, 20th Floor
                        St. Louis, Missouri 63101
                        (314) 421-3400
                        (314) 421-3128 (fax)

9650254